UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

RANDY WASHINGTON,

          Defendant.

```
USDS SDNY
DOCUMENT
ELECTRONICALLY F..
DOC #: _____
DATE FILED: 1-24-14
```

No. 11 Cr. 605 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

    As the Court no longer sees any justification for sealing the attached documents, and the parties in this matter have no objection to their being publicly docketed, IT IS HEREBY ORDERED THAT this Order, along with the attached letters and Order, be filed on the public, electronic docket for this case.

SO ORDERED.

Dated:    January 24, 2014
               New York, New York

                                            RICHARD J. SULLIVAN
                                            UNITED STATES DISTRICT JUDGE

## FREEMAN, NOOTER & GINSBERG
### ATTORNEYS AT LAW

LOUIS M. FREEMAN
THOMAS H. NOOTER*
LEE A. GINSBERG

------

CHARLENE RAMOS
OFFICE MANAGER

75 MAIDEN LANE
SUITE 503
NEW YORK, N.Y. 10038

(212) 608-0808
TELECOPIER (212) 962-9696
E-MAIL: FNGLAW@AOL.COM

August 28, 2012

**Request To Be Filed Under Seal**
Hon. Richard J. Sullivan
U.S. District Judge
U.S. Courthouse
500 Pearl Street
New York, NY 10007

### Re: United Stated v. Randy Washington
### 11 Cr. 605 (RJS)

Dear Judge Sullivan:

We write to request an adjournment of the sentence in the above case for two reasons. First, Mr. Washington has indicated to undersigned counsel that he is not ready to be sentenced and wishes to have the sentence in his case adjourned to October 2012. This information came to counsel's attention by email along with a request that I visit with Mr. Washington at the MCC, presumably to discuss the reason for his request that the case be adjourned. Unfortunately, however, I cannot see Mr. Washington until Thursday, August 30, 2012, and I would like the opportunity to discuss with my client the reason for this request sufficiently before sentence to digest and act on whatever issues he raises. This request originated with Mr. Washington and is in no way related to the second reason for the adjournment, which originates with counsel.

The second reason to adjourn the sentence is to have Mr. Washington undergo a psychological examination in aid of sentence pursuant to 18 U.S.C. 4244[1]. Counsel makes this request because he has a good faith basis to believe that his client is of limited intelligence and does not understand the nature of the sentencing process, especially the effect of the Sentencing Guideline and the statuary minimums to his case. For example, no matter how many times counsel discusses the operation of the Guidelines or the mandatory minimums and how they

---

[1] Counsel's observations and conversations with Mr. Washington that forms the basis for this application were not known within ten days after sentence.

apply to the facts of his case, the client displays no comprehension and asks in earnest how low his sentence could be, without regard to the mandatory minimum of fifty two years, as if a sentence of probation were possible.

Although counsel is not qualified to assess the nature of the problem, he is able to identify it. It has become clear in the process of preparing for sentence that with this particular client there is something more going on mentally than unrealistic expectations or denial. There appears to be some kind of disconnect or dysfunction.

Accordingly, we are requesting an adjournment of the sentence for the reasons set forth above. We are requesting a sixty day adjournment to allow a psychological examination to be completed. The government consents to an adjournment of the sentence, however it will file a letter responding to the application for a psychological examination.

Respectfully submitted,

*Louis M. Freeman*

Louis M. Freeman

Anthony Strazza

cc: AUSA Tim Kasulis

# FREEMAN, NOOTER & GINSBERG
## ATTORNEYS AT LAW

LOUIS M. FREEMAN
THOMAS H. NOOTER*
LEE A. GINSBERG

------

CHARLENE RAMOS
OFFICE MANAGER

75 MAIDEN LANE
SUITE 503
NEW YORK, N.Y. 10038

(212) 608-0808
TELECOPIER (212) 962-9696
E-MAIL: FNGLAW@AOL.COM

August 30, 2012

**Request To Be Filed Under Seal**
Hon. Richard J. Sullivan
U.S. District Judge
U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re: **United Stated v. Randy Washington**
**11 Cr. 605 (RJS)**

Dear Judge Sullivan:

We write in reference to this Court's Order dated August 28, 2012 regarding counsel's request for a psychological examination of his client. After speaking with the government, counsel withdraws his request for a psychological examination pursuant to 18 U.S.C. §4244 and instead requests a psychological examination pursuant to 18 U.S.C. §3006(A)(e)(1). The government by Christopher DiMase consents to an adjournment for the purpose of having the defendant undergo such an exam pursuant to 18 U.S.C. §3006(A)(e)(1).

Counsel represents that his client is financially unable to obtain the services of an expert able to perform the psychological examination and testing that is believed to be necessary to provide adequate representation. Mr. Washington filled out a financial affidavit when he was first arrested and was found eligible for appointed counsel; he has been incarcerated ever since. As stated in our August 28, 2012 letter, counsel makes this request because he has a good faith basis to believe that his client is of limited intelligence and does not understand the nature of the sentencing process, especially the effect of the Sentencing Guideline and the statuary minimums to his case.

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,           :
                                    :          SEALED
        - against -                 :          ORDER
                                    :
RANDY WASHINGTON,                   :       11 CR 605(RJS)
            Defendant.              :
-----------------------------------X
```

Upon the application of Louis M. Freeman, attorney for the defendant herein, it appearing that the Court appointed Dr. Sanford Drob to interview, test and evaluate the defendant Randy Washington, it appearing that the defendant is incarcerated at the Metropolitan Correctional Center in Manhattan (MCC) at a facility operated by the United States Bureau of Prisons, and it appearing that a Court Order is necessary for Dr. Drob to enter the MCC to interview, test and evaluate Randy Washington, it is hereby

**ORDERED** that the United States Bureau of Prisons permit Dr. Drob to enter the facility to interview, test and evaluate Randy Washington (Register No. 65266-054); that Dr. Drob be provided with a private room such as those available for attorney client visits in the Visiting Room at the MCC; that this Order shall remain in effect from September 10, 2012 until October 31, 2012, and during

this time Dr. Drob may interview Mr. Washington in person on one or more occasions. **SO ORDERED:**

								_____
								HON. RICHARD J. SULLIVAN

Dated: September 10, 2012
       New York, New York

# FREEMAN, NOOTER & GINSBERG
## ATTORNEYS AT LAW

LOUIS M. FREEMAN
THOMAS H. NOOTER*
LEE A. GINSBERG

CHARLENE RAMOS
OFFICE MANAGER

*NY AND CALIF. BARS

75 MAIDEN LANE
SUITE 503
NEW YORK, N.Y. 10038

(212) 608-0808
TELECOPIER (212) 962-9696
E-MAIL: FNGLAW@AOL.COM
WWW.FNGLAW.COM

April 9, 2013

Hon. Richard J. Sullivan
United States District Judge
U.S. Courthouse
40 Foley Square
New York, NY  10007

### Re: United States v. Randy Washington
### 11 CR 605 (RJS)

Dear Judge Sullivan:

Undersigned counsel respectfully requests an additional adjournment to pursue the follow-up testing specifically recommended by Dr. Barr in his April 8, 2013 expert report.[1] *See* attached Barr Report at 6. In an order dated February 11, this Court directed undersigned counsel to submit to the Court, by today's date, the results of Dr. Barr's neuropsychological evaluation of Mr. Washington and further to indicate what relief Mr. Washington will be seeking at the upcoming hearing, which is presently scheduled for May 10, 2013. In light of Dr. Barr's findings, however, undersigned counsel respectfully suggests that all parties — including the government and this Court — will be in a better position to determine the proper course of action and the appropriate form of relief if Dr. Barr's clinical recommendations are followed. Accordingly, undersigned counsel respectfully requests an additional ten-week adjournment of the May 10 hearing to pursue Dr. Barr's recommendations. The government takes no position on this request.

---

[1] In the vast majority of criminal cases where Dr. Barr has been retained as an expert, it has been the Government or the People.

As this Court is aware, Mr. Washington was originally evaluated by Dr. Sanford Drob on September 25 and October 14, 2012. *See* Drob Report at 1. Dr. Drob issued a report dated October 30, 2012, describing the results of Mr. Washington's evaluation, including his performance on forensic instruments such as the Weschler Adult Intelligence Scale, fourth edition (WAIS-IV) and the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS). *See id.* at 4. In contrast with the WAIS-IV, which measures a subject's acquired knowledge, Dr. Drob explained that RBANS is used to determine "deficits in more basic cognitive skills." *See id.* Although Mr. Washington's score on the WAIS-IV fell in the "low average" range, his results in the RBANS placed him in the lowest 1st percentile. *See id.* at 4-5. He concluded that "the results of psychological testing indicate the presence of serious deficits in basic cognitive processes, problems in reality testing and an underlying thinking disturbance." *See id.* at 8. Dr. Drob thus recommended further evaluation of Mr. Washington's memory and neuropsychological status. *See id.* In an order dated February 20, 2013, this Court appointed Dr. William Barr to conduct such an evaluation.

Dr. Barr evaluated the defendant on March 1, 2013, and the results of Dr. Barr's evaluation are memorialized in a report dated April 8, 2013. *See* Barr Report at 1. As a threshold matter, Dr. Barr reviewed Mr. Washington's results under the WAIS-IV and the RBANS and concluded, "The findings from the RBANS, in the context of the WAIS-IV scores, indicates the presence of serious cognitive impairment." *See id.* at 3-4. Dr. Barr proceeded to subject Mr. Washington to testing under 16 additional instruments, which are enumerated in the report. *See id.* at 4. He summarized the results of this testing as follows:

> the current test findings indicate that Mr. Washington's scores on a variety of neuropsychological tests are below the range expected for his age and background, and do indicate weaknesses in specific cognitive skills.
>
> Particularly low scores were observed on tests of problem solving, mental flexibility, and memory. There were no indications that Mr. Washington's performances on these tests were affected by low effort or any attempt at malingering. Taken together the findings indicate a profile of cognitive dysfunction that is likely to have a [sic] effect on Mr. Washington's general functioning, including his ability to incorporate and retain new information, comprehend difficult concepts, and make high level decisions.

2

*See id.* at 5-6. These mental deficits, Dr. Barr explained, "are likely to have caused Mr. Washington difficulties with retaining specific details of his legal case and making informed decisions about his legal options." *See id.* at 6. Accordingly, Dr. Barr concluded, "It is thus my opinion, to a reasonable degree of psychological certainty, that Mt. Randy Washington's cognitive functions are limited to a degree that would have caused him to hold an unrealistic view of the evidence against him, his chances at prevailing at trial, and the consequences he would face if convicted." *See id.* at 7.

Significant questions remain, however, concerning the physiological and/or psychological bases for Mr. Washington's impairment. *See id.* at 6 ("The precise etiology of Mr. Washington's cognitive disturbance remains unclear."). For example, Dr. Barr raised the possibility that Mr. Washington's mental deficiencies result from "an underlying neurological disturbance involving frontal and temporal brain regions in both cerebral hemispheres." *See id.* at 6. Alternatively, his impairment could be the result of "an underlying neurological condition," including epilepsy. *See id.* Accordingly, Dr. Barr recommended that Mr. Washington be subjected to the following three procedures:

> 1. A clinical neurological examination by a board-certified neurologist to investigate the history and presence of a neurological disorder affecting the functioning of Mr. Washington's brain.
>
> 2. Brain imagining with magnetic resonance imaging (MRI) to rule out the presence of a structural neuropathological abnormality.
>
> 3. An electroencephalographic (EEG) study to rule out the presence of abnormal cerebral activity associated with epilepsy or any other neurological condition.

*See id.* at 6.

Undersigned counsel thus respectfully requests an additional adjournment in order to follow Dr. Barr's clinical recommendations. With the benefit of such additional information, undersigned counsel, the government, and the Court will be in the best position to consider the nature, duration, and extent of Mr. Washington's mental impairment (and whether his condition may be susceptible to appropriate treatment, as a sentencing factor). Such a determination would thus be strongly relevant to the question, for example, of whether there is a basis to set aside the

3

conviction and/or whether a new trial may be appropriate in Mr. Washington's case, and (if so) whether he could be comply with the two prongs of *Dusky v. United States*, 362 U.S. 402 (1960). The follow-up testing urged by Dr. Barr would thus grant all parties assistance with fashioning appropriate relief in this case. Conversely, in the absence of such testing, undersigned counsel believes his ability to advise Mr. Washington and this Court regarding the appropriate course of action would be compromised.

Respectfully submitted,

*Louis M. Freeman*

Louis M. Freeman

cc: AUSA Tim Kasulis
    AUSA Chris DiMase

## FREEMAN, NOOTER & GINSBERG
### ATTORNEYS AT LAW

LOUIS M. FREEMAN
THOMAS H. NOOTER*
LEE A. GINSBERG

CHARLENE RAMOS
OFFICE MANAGER

75 MAIDEN LANE
SUITE 503
NEW YORK, N.Y. 10038

(212) 608-0808
TELECOPIER (212) 962-9696
E-MAIL: FNGLAW@AOL.COM

April 26, 2013

**Request Filing Under Seal**
Hon. Richard J. Sullivan
U.S. District Judge
U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re: **United Stated v. Randy Washington**
**11 Cr. 605 (RJS)**

Dear Judge Sullivan:

**Introduction**

In an order dated April 19, 2013, this Court directed Mr. Washington, through counsel, to make a submission by today's date describing the remedies Mr. Washington will be seeking in light of recent findings by both Dr. Drob and Dr. Barr that Mr. Washington suffers from a severe cognitive impairment. This mental impairment, Dr. Barr explained in his April 1, 2013 report, caused Mr. Washington "to hold an unrealistic view of the evidence against him, his chances at prevailing at trial, and the consequences he would face if convicted." See Barr Report at 7. Mr. Washington now moves for a new trial, pursuant to Fed. R. Crim. P. 33, on the basis that the interests of justice require that Mr. Washington have a meaningful opportunity to knowingly and voluntarily plead guilty in this case, and to avoid the draconian 52-year mandatory minimum sentence that would otherwise apply. In the alternative, Mr. Washington asserts that, as a result of his neurological impairment, he was deprived of the effective assistance of counsel during his plea bargaining process. See *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Missouri v. Frye*, 132 S. Ct. 1399 (2012). Mr. Washington thus moves for relief consistent with the remedial portion of Lafler. See Lafler, 132 S. Ct. 1388–90.

## Lafler and Frye

In the companion cases of Lafler and Frye, the U.S. Supreme Court confirmed that a criminal defendant's constitutional right to the effective assistance of counsel extends to the plea bargaining process. See Lafler, 132 S. Ct. at 1384 (2012); Frye, 132 S. Ct. at 1405 (2012). In Lafler, as in this case, the government offered the criminal defendant a plea offer, which the defendant rejected. See Lafler, 132 S. Ct. at 1383. The defendant was subsequently convicted at trial and received a sentence considerably harsher than he would have received had he accepted the plea. See *id.* The government petitioner argued that the Sixth Amendment right to counsel exists primarily to preserve a defendant's trial rights, and thus, the fair trial Lafler received after rejecting the plea offer remedied any lack of meaningful counsel the defendant endured during the plea process. Yet the Court rejected the government's argument, explaining, to the contrary, that the criminal justice system today "is for the most part a system of pleas, not a system of trials":

> In the end, petitioner's three arguments amount to one general contention: A fair trial wipes clean any deficient performance by defense counsel during plea bargaining. That position ignores the reality that criminal justice today is for the most part a system of pleas, not a system of trials. Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. As explained in *Frye*, the right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing convictions and determining sentences.

See *id.* at 1388 (internal citation omitted). Indeed, the facts of this case underscore just how important the plea process is in the criminal justice system, as Mr. Washington's irrational rejection of the plea offer in this case now exposes him to a draconian 52-year mandatory minimum sentence. The Lafler Court noted that while a criminal defendant has no constitutional right to be offered a plea, if the government does choose to exercise its discretion to offer a plea, the constitutional right to counsel attaches during this process. See *id.* at 1387.

In contrast with this case, Lafler and Frye specifically involved the defendants' claims that their defense attorneys rendered constitutionally inadequate assistance under the first prong of *Strickland v. Washington*, 466 U. S. 668 (1984). In this case, Mr. Washington does not basis his claim on the argument that the performance of counsel was deficient.[1] Rather, his claim concerns the fact that a defendant may be deprived of the effective assistance of counsel not only

---

[1] However, counsel acknowledges that in raising this argument the court may wish to appoint another attorney to examine whether counsel was deficient.

2

on account of his attorney's incompetence, but also where the defendant himself suffers from reduced competence. See *Dusky v. United States*, 362 U.S. 402 (1960); *Drope v. Missouri*, 420 U.S. 162, (1975); *United States v. Nichols*, 56 F.3d 403 (2d Cir. 1995); accord *United States v. Fulton*, 5 F.3d 605 (2d Cir. 1993) ("Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have.")

Indeed, the test for a defendant's competency is framed particularly in the context of his right to the effective assistance of counsel, and thus asks whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." See Dusky, 362 U.S. at 402 (emphasis added). Moreover, in finding a defendant incompetent the Court must determine "by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." See 18 U.S.C. § 4241 (emphasis added). The same standard for competency applies during the plea stage of a prosecution as applies at trial. See *Godinez v. Moran*, 509 U.S. 389, 399 (1993). Thus, if Mr. Washington had a constitutional right to the effective assistance of counsel during his plea negotiations — and Lafler and Frye both hold that he does — Mr. Washington was deprived of that right in this case, where his cognitive impairment prevented counsel from effectively advising him about the plea offer.

Indeed, the preponderance of the evidence in this case demonstrates that Mr. Washington suffers from "a mental disease or defect" that prejudiced his rights in the manner described in 18 U.S.C. § 4241. Mr. Washington has now been examined both by Dr. Drob and by Dr. Barr, and the results of these neuropsychological examinations are provided both in these doctors' respective expert reports as well as summarized in counsel's letter to the Court dated April 9, 2013. In short, Dr. Drob concluded that "the results of psychological testing indicate the presence of serious deficits in basic cognitive processes, problems in reality testing and an underlying thinking disturbance." See Drob Report at 8. Dr. Barr concluded that "the findings indicate a profile of cognitive dysfunction that is likely to have [an] effect on Mr. Washington's general functioning, including his ability to incorporate and retain new information, comprehend difficult concepts, and make high level decisions." See Barr Report at 5–6. Indeed Dr. Barr opined that Mr. Washington's mental impairment was "likely to have caused Mr. Washington difficulties with retaining specific details of his legal case and making informed decisions about his legal options." See *id.* at 6. Accordingly, Dr. Barr concluded, "It is thus my opinion, to a reasonable degree of psychological certainty, that Mt. Randy Washington's cognitive functions are limited to a degree that would have caused him to hold an unrealistic view of the evidence against him, his chances at prevailing at trial, and the consequences he would face if convicted." See *id.* at 7.

As discussed in counsel's April 9 letter, Dr. Barr further recommended that three additional tests be conducted to determine the underlying etiology of Mr. Washington's cognitive impairment. See *id.* at 6. To the extent this Court or the government has any lingering questions

3

concerning whether Mr. Washington has a "mental disease or defect" that prevented him from participating meaningfully in his plea negotiation, counsel believes the tests recommended by Dr. Barr would provide such additional evidence and would in any event complete the record. Accordingly, counsel respectfully requests this Court reconsider its April 19 order denying Mr. Washington's request for an adjournment, and instead grant the adjournment to conduct these tests. Nevertheless, it is counsel's position, even on the current record, under Dusky and Lafler, Mr. Washington's mental disease or defect deprived him of the effective assistance of counsel during his plea negotiations.

Further, whether this motion is considered in terms of Mr. Washington's Sixth Amendment right to counsel under Lafler and Dusky, or more broadly as a Rule 33 motion for a new trial "in the interests of justice," counsel respectfully believes that adjourning the matter to permit the tests recommended by Dr. Barr would inform this Court's choice of an effective remedy. Indeed, Lafler recognizes the broad discretion a trial court possesses to fashion an appropriate remedy such as in the situation at issue here:

> In some situations it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice. In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.

See Lafler, 132 S. Ct. at 1389 (emphasis added; internal citation omitted). Counsel suggests that approving Dr. Barr's recommendations for follow-up testing would also permit this Court to exercise its discretion on a more informed medical basis, concerning (for example) the extent to which Mr. Washington's mental condition may be susceptible to appropriate treatment. This information would be critical to Court and both parties in determining whether if in fact a Lafler-like result is appropriate here: Does the Court require the prosecution to reoffer the plea proposal, as suggested by the Supreme Court in Lafler.

4

## Fed. R. Crim. P. 33[2]

      Finally, Mr. Washington requests this Court exercise its discretion under Fed. R. Crim. P. 33, to vacate Mr. Washington's conviction and order a new trial where, as here "the interest of justice so requires." See Fed. R. Crim. P. 33(a). Generally, a Rule 33 motion must be made within 14 days of the verdict; yet where the motion is based on newly discovered evidence, however, a new trial may be ordered within three years of the guilty verdict. See Fed. R. Crim. P 33(b). Here, the results of the neuropsychological testing performed by Drs. Drob and Barr present substantial newly discovered evidence that Mr. Washington was unable to meaningfully participate in plea negotiations and consider his plea offer in a meaningful way. In other words, he did not knowingly and voluntarily reject it. Because a rational defendant would never have subjected himself to the 52-year mandatory minimum sentence in this case, particularly after the reverse proffer session in which the government demonstrated the overwhelming proof it possessed of Mr. Washington's guilt, counsel suggests the interests of justice would be strongly disserved by imposing a 52-year sentence on Mr. Washington.

      Because the information contained herein discusses mental disease or defect and is essentially medical in nature, counsel requests that this letter be sealed.

Respectfully submitted,

*Louis M. Freeman*

Louis M. Freeman

cc: AUSA Tim Kasulis
    AUSA Chris DiMase

---

[2] It is suggested that the Lafler and Frye arguments be considered in support of the Fed. R. Crim.P. 33 arguments.