UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────

No. 11-cr-605 (RJS)

───────────────

UNITED STATES OF AMERICA,

VERSUS

RANDY WASHINGTON,

Defendant.

───────────────

OPINION AND ORDER
July 31, 2014

───────────────

RICHARD J. SULLIVAN, District Judge:

This case involves the sentencing of Defendant Randy Washington, who was charged with a variety of robbery, narcotics, and firearm crimes, rejected the government's 10-year plea offer, was found guilty on all counts at trial, and is now facing a mandatory minimum sentence of 52 years in prison. Now before the Court is Defendant's motion seeking (1) another opportunity to accept the government's plea offer because of allegedly ineffective assistance of counsel during plea negotiations, or (2) vacatur of the jury verdict because Defendant was not competent to consider the plea offer or stand trial. For the reasons stated herein, the Court denies Defendant's motion.

I. BACKGROUND[1]

As demonstrated by the evidence at trial, Defendant was a relatively small-time crack and heroin dealer who also dabbled in armed robberies and weapons sales in the West Bronx. By the time he was twenty-three years old, Defendant had been arrested at least eleven times and convicted of nine offenses.

---

[1] In deciding Defendant's motion, the Court has reviewed the full record in this case and has considered Defendant's opening brief (Mem.), the government's opposition brief (Opp'n), and Defendant's reply brief (Reply), as well as all affidavits, affirmations, and exhibits attached thereto.

On June 16, 2011, Defendant was arrested pursuant to a Complaint that charged him with various robbery, narcotics, and firearm offenses. (Doc. No. 1.) On December 5, 2011, the government filed a Second Superseding Indictment (S2 11 Cr. 605) containing eight counts, including: conspiracy to commit robbery (Count One); robbery and attempted robbery (Counts Two, Three, and Four); brandishing a firearm during the commission of a robbery (Counts Five and Six); conspiracy to distribute and possess narcotics (Count Seven); and trafficking firearms (Count Eight). (Doc. No. 17.)

On December 7, 2011, the government extended a plea offer to Defendant's then-attorney, Louis Freeman ("Freeman"). (Opp'n at 2.)[2] Under the terms of that offer, Defendant would be permitted to plead guilty to one substantive robbery count and one count for brandishing a firearm in connection with that robbery. (*See* Hr'g Tr., Dec. 8, 2011 (Doc. No. 106; the "Dec. 8 Tr."), at 6:8–18.) Defendant was arraigned on the Second Superseding Indictment on December 8, 2011, at which time Defendant's counsel acknowledged the terms of the plea offer – noting that the brandishing charge carried a seven-year minimum term of imprisonment, which, when combined with the sentencing guidelines range attributable to the robbery charge, would result in a total guidelines range of approximately 120 months. (*Id.*) At that proceeding, the government also explained that if Defendant declined the offer and was convicted at trial on all counts, the mandatory minimum sentence would be forty-two years of imprisonment. The government further noted that Defendant would be facing a mandatory fifty-two-year sentence if the government filed a prior felony information in connection with the narcotics conspiracy count. (*Id.* at 7:11–14.) On January 12, 2012, the government met with Defendant and Freeman at a "reverse proffer session" at which the government again explained the ten-year plea offer and the dire sentencing consequences if Defendant were convicted of all counts at trial. (Opp'n at 2.)

On January 26, 2012, Freeman informed the government that Defendant had declined its plea offer and would instead proceed to trial. (*Id.*) True to its word, the government thereafter filed a prior felony information, which increased the mandatory minimum sentence on Count Seven to twenty years pursuant to 21 U.S.C. § 851. (Doc. No. 21.) The government also obtained a Third Superseding Indictment (S3 11 Cr. 605), which expanded the dates of the robbery conspiracy charged in Count One and the narcotics conspiracy charged in Count Seven from those provided in the second Superseding Indictment. (Doc. No. 29.) By virtue of the prior felony information and the two brandishing counts, Defendant faced a maximum sentence of life and a mandatory minimum sentence of fifty-two years if convicted on all counts.

In advance of trial, Defendant filed a motion to suppress evidence (Doc. No. 37) and a motion to sever the robbery-related counts from the narcotics and firearms counts (Doc. No. 42), both of which the Court denied at a pretrial conference on March 5, 2012. On March 5, 2012, Defendant then filed a motion *in limine* seeking to preclude certain evidence (Doc. No. 46), which the Court denied on March 8, 2012 (Doc. No. 49). Trial commenced on March 12, 2012, and on March 20, 2012, the jury returned guilty verdicts on all counts. The Court scheduled sentencing for July 20, 2012.

After sentencing was adjourned, Freeman sent a letter to the Court requesting

---

[2] Defendant has not challenged the facts set forth in the government's opposition brief.

2

that the Court order an evaluation of Defendant's cognitive capacity. (Doc. No. 103.) In his letter, Freeman noted that he did not make his request earlier because the "observations and conversations" that formed the basis for the application "were not known" by him until more than ten days after Defendant was found guilty.[3] (*Id.*) The Court approved Defendant's request and appointed the doctor proposed by Defendant, Sanford L. Drob, to examine Defendant and provide the Court with a written report of his findings as to Defendant's competence and mental capacity. (*Id.*) On October 30, 2012, after interviewing Defendant twice, Dr. Drob issued a report identifying certain cognitive deficits in Defendant but concluding that he was competent to proceed to sentencing and finding no evidence that Defendant had been incompetent to stand trial. (Aff. of David Gordon, dated Aug. 9, 2013 ("Gordon Aff."), Doc. No. 87, Ex. 3 ("Drob").) On February 8, 2013, the Court granted Freeman's request to have a further neuropsychological evaluation performed. (Doc. No. 70.) Thereafter, Dr. William B. Barr – an expert also selected by Defendant and appointed by the Court – examined Defendant and issued a report on April 8, 2013 that largely confirmed Dr. Drob's findings and identified additional cognitive deficits. (Gordon Aff., Ex. 4 ("Barr").) Dr. Barr did not state any conclusions concerning Defendant's competence either at the time of the evaluation or at trial. (*See id.*) On April 9, 2013, Freeman sent a letter to the Court seeking to adjourn sentencing again for further psychological testing to determine the "bases" of Defendant's cognitive impairments, such as whether they stemmed from an "underlying neurological disturbance" or are the result of an "underlying neurological condition," such as epilepsy. (Doc. No. 103.) However, as Defendant failed to establish the legal relevance of such a determination, the Court denied this request. (Doc. No. 73.)

On April 26, 2013, Freeman sent a letter to the Court moving for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (Doc. No. 103.) Citing *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), Freeman argued that Defendant was deprived of "a meaningful opportunity to knowingly and voluntarily plead guilty in this case," or, in the alternative, that Defendant's neurological impairment deprived him of effective assistance of counsel during the plea bargaining process. (Doc. No. 103.) The Court held a conference concerning the issues raised in this letter on May 10, 2013, at which the Court noted that Dr. Barr's report included allegations by Defendant that he was not notified of certain provisions of the plea offer prior to rejecting it. (Hr'g Tr., May 10, 2013 (Doc. No. 104; the "May 10 Tr."), at 4:15–5:24.) Because such allegations by Defendant might provide the basis for an ineffective assistance of counsel claim, the Court granted Freeman's request to be relieved from the case and appointed David Gordon ("Gordon") to represent Defendant. (*Id.* at 9:10–17, 12:18–13:14.)

On August 9, 2013, Defendant, through Gordon, filed a motion requesting that the Court: (1) find that Defendant was

---

[3] Freeman's letter requested an evaluation of Defendant pursuant to 18 U.S.C. § 4244 (Doc. No. 103), which provides that "[a] defendant found guilty of an offense . . . may, within ten days after the defendant is found guilty, and prior to the time the defendant is sentenced, file a motion for a hearing on the present mental condition of the defendant if the motion is supported by substantial information indicating that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4244(a). Although Freeman's letter actually stated that the basis for his application was "not known within ten days after *sentence*," it seems clear that he meant ten days after Defendant was found guilty, as that is the operative date under the statute and sentencing had not yet occurred. (Doc. No. 103 (emphasis added).)

3

incompetent to engage in plea negotiations or stand trial and therefore set aside the jury's verdict; or, in the alternative, (2) find that Freeman's representation of Defendant prior to trial amounted to ineffective assistance of counsel and therefore, pursuant to *Lafler*, order the government to reoffer its plea agreement to Defendant. (Doc. No. 85.) On August 21, 2013, Freeman filed a letter responding to Defendant's allegations as to his performance concerning the plea agreement. (Doc. No. 82.) The government filed its opposition on August 23, 2013 (Doc. No. 84), and Defendant filed his reply on August 30, 2013 (Doc. No. 90). For the reasons set forth below, the Court finds that Defendant was both competent and adequately represented before, during, and after trial.

II. DISCUSSION

A. Competency

The test for whether a defendant is competent to stand trial, or to engage in plea negotiations, is well settled. "The defendant must have (1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)); *see also United States v. Wright*, 341 F. App'x. 709, 711 (2d Cir. 2009); *United States v. Gambino*, 828 F. Supp. 191, 194 (S.D.N.Y. 1993) (noting that "the inquiry involves an assessment of whether the accused can assist in such ways as providing accounts of the facts, names of witnesses, etc.," but also noting that "it is not sufficient merely that the defendant can make a recitation of the charges or the names of witnesses, for proper assistance in the defense requires an understanding that is rational as well as factual" (quotation marks and internal citations omitted). "In the federal courts, competency is determined by a preponderance of the evidence." *Nichols*, 56 F.3d at 410 (citing 18 U.S.C. § 4241(d)) (declining to answer the question of which party bears the burden of proof on the question of competency). In determining competency, "the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." *Id.* at 411.

The Second Circuit has made clear that "some degree of mental illness" is not the equivalent of "incompetence to stand trial." *Id.* at 412 (quotation marks omitted); *see also id.* ("The fact that five of the six reports cited by Mason . . . indicated evidence of paranoia or paranoid delusions, and that two indicated the possible onset of psychosis at certain periods, does not undermine the district court's finding of competency.") Moreover, the same standard for competency at trial also applies in the context of plea negotiations. As the Supreme Court held in *Godinez v. Moran*:

> [E]ven assuming that there is some meaningful distinction between the capacity for "reasoned choice" and a "rational understanding" of the proceedings, we reject the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the *Dusky* standard. . . . And while the decision to plead guilty is undeniably a profound one, it is no more complicated than the sum total of decisions that a defendant may be called upon to make during the course of a trial. (The decision to plead guilty is also made over a shorter period of time, without the distraction and burden of a trial.) This being so, we can conceive of no basis for demanding a higher level of

4

competence for those defendants who choose to plead guilty.

509 U.S. 389, 398–99 (1993).[4]

In light of all the evidence before it, the Court finds that Defendant was competent to both engage in plea negotiations and stand trial, and is presently competent to proceed with sentencing.

First, the results of the expert forensic evaluations of Defendant's mental and cognitive state weigh in favor of such a finding. After examining Defendant on September 25 and October 14, 2012, Dr. Drob noted certain "serious deficits in [Defendant's] basic cognitive processes" that might contribute to a "failure to be realistic and reasonable." (Drob at 8.) Indeed, Dr. Drob reported that Defendant "may well have had an unrealistic view of the evidence against him, his chances of prevailing at trial, and the consequences he would face if convicted." (*Id.* at 9.) Nonetheless, Dr. Drob unequivocally concluded that Defendant "has a clear understanding of court procedure, is capable of cooperating with counsel, and in [his] professional forensic psychological opinion is competent to proceed to sentencing." (*Id.* at 3.) Dr. Drob further noted that he found "no indication that [Defendant] was not competent to proceed at the time of his trial." (*Id.* at 9.)

Dr. Barr, who examined Defendant on March 1, 2013 – over four months later – reported that his own results "confirm the findings outlined in Dr. Sanford Drob's" report. (Barr at 5.) Dr. Barr also noted "deficits in multiple cognitive domains," but found "no evidence indicating that [Defendant] suffers from any general form of mental 'sub-normality' or intellectual disability." (*Id.*) Indeed, Dr. Barr recounted how Defendant "was able to describe the concept of plea bargaining . . . [and] was able to detail the advantages received by both the defendant and the prosecutors in a hypothetical plea situation." (*Id.* at 3.) He also reported that Defendant was aware that "he faced the potential of having a long sentence (30–40 years) if he would be found guilty at trial" but decided to "take his chance . . . because he knew that the cooperating witness was lying." (*Id.*) To be sure, Dr. Barr noted that the deficits that both he and Dr. Drob identified were "likely to have caused [Defendant] difficulties with retaining specific details of his legal case and making informed decisions about his legal options." (*Id.* at 6.) Dr. Barr also echoed Dr. Drob in concluding that Defendant's "cognitive functions are limited to a degree that would have caused him to hold an unrealistic view of the evidence against him, his chances [of] prevailing at trial, and the consequences he would face if convicted." (*Id.* at 7.) Notably, however, Dr. Barr made no finding or comment on the issue of "competency," let alone offered an opinion that challenged or contradicted Dr. Drob's finding that Defendant was competent to both stand trial and proceed with sentencing.

Put simply, Dr. Drob explicitly stated that there was no indication that Defendant was not competent to stand trial, and Dr. Barr did not contradict this finding. *See United States v. VanHoesen*, 450 F. App'x 57, 60 (2d Cir. 2011) (holding, even where a forensic psychologist found defendant not to

---

[4] Similarly, this standard governs a defendant's competency to participate in sentencing. *See United States v. Arenburg*, 605 F.3d 164, 168 (2d Cir. 2010) (noting that the due process right requiring that a defendant be competent to participate in proceedings against him "spans the duration of a criminal proceeding"); *Nichols*, 56 F.3d at 413 (applying a similar standard in sentencing); *United States v. Wolfson*, 616 F. Supp. 2d 398, 418–19 (S.D.N.Y. 2008) (holding that the *Dusky* standard applies to sentencing proceedings).

5

be competent, that the district court did not err in attributing more weight to the expert reports finding that defendant was competent). Further, the portion of Dr. Barr's report describing Defendant's understanding of the plea negotiation process, his understanding of the evidence against him and his response to it, and his knowledge that he faced a sentence of several decades if he was found guilty demonstrates that Defendant had "a rational as well as factual understanding of the proceedings against him." *Nichols*, 56 F.3d at 410 (quotation marks omitted). In addition, the fact that Defendant was able to relate this understanding to Dr. Barr also implies that Defendant had, and has, sufficient "ability to consult with his lawyer with a reasonable degree of rational understanding." *Id.* As for the experts' observation that Defendant's ability to accurately evaluate and weigh his chances of winning at trial and the consequences of being convicted was limited, such a finding likely applies to nearly every criminal defendant who opts for a trial and loses, and therefore does not compel a finding of incompetence. *See United States v. Suri*, 465 F. App'x 20, 22 (2d Cir. 2012) (holding that defendant's "self-defeating[] deci[sion] to testify" at his trial is not necessarily evidence of a "psychotic mental state" suggesting incompetence).

Second, the Court's own observations of Defendant – at his arraignment on the Second Superseding Indictment on December 8, 2011 (*see* Dec. 8 Tr. at 13:12–14:6), during the six-day trial, and at various Court proceedings before and after trial – mirror Dr. Drob's and Dr. Barr's findings as to Defendant's competence to engage in plea negotiations and stand trial. *See United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986) (noting that deference is owed to the district court's determinations based on observation of the defendant during the proceedings). Indeed, the Court notes that during the trial, Defendant appeared to be paying attention, to be lucid, and to be conferring with counsel. Moreover, nothing about Defendant's behavior in the course of this case suggested that he failed to understand the proceedings against him or was unable to effectively work with his attorney.

Third, the Court also finds it significant that Defendant's counsel neither recognized nor informed the Court of any issue with or doubts concerning Defendant's competency until sentencing – nearly five months after trial. As the Second Circuit explained in *Vamos*, "since incompetency involves an inability to assist in the preparation of a defense or rationally to comprehend the nature of the proceedings, failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence." 797 F.2d at 1150 (finding defendant competent where "counsel neither moved for a competency hearing pursuant to § 4241 nor indicated to the court at the time of trial any grounds for doubting the defendant's competence"); *see also United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("A failure by trial counsel to indicate that the defendant had any difficulty in assisting in preparation or in comprehending the nature of the proceedings provides substantial evidence of the defendant's competence." (quotation marks omitted)). Indeed, had counsel believed that Defendant's decision to go to trial could only be the result of Defendant's lack of a rational understanding of the circumstances he faced (*i.e.*, his lack of competency), then his failure to raise this issue with the Court prior to trial is inexplicable. Instead, the Court views the absence of any such motion by Freeman prior to sentencing as evidence that he did not view Defendant as unable to make a

rational decision, but rather as simply making a poor decision.[5]

Reduced to its essence, Defendant's argument amounts to an assertion that the decision to reject the plea offer, which was likely to yield a ten-year sentence, and instead go to trial, which carried a potential fifty-two-year mandatory sentence, was objectively irrational and therefore proof of Defendant's incompetence. The Court rejects this premise, which is circular in its logic. Certainly, many defendants choose to plead guilty instead of risk a trial that could result in the imposition of a high mandatory minimum sentence. However, this does not mean that any defendant who opts for trial, even when faced with a plea offer stipulating to a significantly shorter term of imprisonment, is incompetent or even irrational. For instance, a defendant may believe himself to be innocent of the crimes charged, in which case a ten-year sentence would be wholly unacceptable. Other defendants might attach a very high value to the possibility, however slight, of serving *no* jail time at all. Going to trial for such reasons does not mean that the defendant was incompetent. *Cf. Suri*, 465 F. App'x at 22 (holding that defendant's "self-defeating[]" choice to testify at trial is not necessarily evidence of incompetence). Thus, the Court rejects Defendant's logic, which would implicate the mental competence of virtually every defendant who turned down a plea offer only to lose at trial.

As to Defendant's competence to go forward with sentencing, the same two-pronged test applies, requiring that the "defendant must be able meaningfully to consult with his lawyer in connection with the specific proceeding at issue" and "have a rational understanding of the proceeding." *Wolfson*, 616 F. Supp. 2d at 419; *see generally Panetti v. Quarterman*, 551 U.S. 930 (2007) (holding that the competency determination is specific to the proceeding at issue). Thus, in the sentencing context, the defendant must be able to engage in the decision of whether he will speak at sentencing and must have an understanding of why he is being punished. *See Wolfson*, 616 F. Supp. 2d at 419. Again, relying on the conclusions of Dr. Drob and Dr. Barr, as well as the Court's own observations of Defendant, the Court finds that Defendant is competent to proceed with sentencing. Although Defendant denies that he is in fact guilty (*see* Barr at 2 ("[Defendant] denied having any involvement with any armed robbery, drug sales, or trafficking of guns.")), there is no evidence to suggest any confusion about the fact that he is to be sentenced because he was found guilty by a jury of committing serious crimes. *Cf. Wolfson*, 616 F. Supp. 2d at 420–21 (finding defendant incompetent to participate in sentencing where he suffers from delusions that his sentencing is motivated by a wide-ranging government conspiracy to silence him and "thus lacks a rational understanding of why he is being sentenced"). Indeed, as mentioned above, the present motion includes an affidavit from Defendant in which he recites the legal arguments put forward by his counsel. (*See* Washington Aff.) Accordingly, the Court finds by a preponderance of the evidence that Defendant is fully competent to proceed with sentencing.

---

[5] In his August 21, 2013 letter, Freeman stated that despite his reviewing and explaining the plea agreement to Defendant, "in my opinion, Mr. Washington did not understand what was being said to him because of a cognitive impairment," citing to Dr. Drob's and Dr. Barr's reports. (Doc. No. 82.) However, Freeman provided no further explanation or information to support this belief. Therefore, the Court attaches no weight to Freeman's observation beyond what is in the expert reports, which, as discussed above, did *not* find Defendant to be incompetent.

Finally, as may be evident from the above discussion, the Court also finds it unnecessary to conduct a hearing on the issue of Defendant's competence to engage in plea negotiations, stand trial, or proceed with sentencing. "Neither the federal statute governing competency determinations, 18 U.S.C. § 4241, nor the Due Process Clause requires a hearing in every instance; a hearing is required only if the court has 'reasonable cause' to believe that the defendant has a mental defect rendering him incompetent." *Nichols*, 56 F.3d at 414. Here, despite the Court's own observations suggesting that Defendant was and remained competent to proceed, the Court ordered the psychological evaluations out of an abundance of caution. Since those evaluations only confirmed Defendant's competence, there is no "reasonable cause" to believe that a hearing would be necessary or helpful. *See United States v. Morrison*, 153 F.3d 34, 47 (2d Cir. 1998) ("While the district court found that there was reasonable cause to believe that the defendant might be incompetent before ordering a psychiatric evaluation of him, it found that no reasonable cause existed to hold a hearing once she received the report of that evaluation. The district court therefore did not need to hold a hearing."); *Nichols*, 56 F.3d at 414 ("In deciding that an evidentiary hearing is unnecessary, a court may rely not only on psychiatrists' reports indicating competency but also on its own observations of the defendant.")

Accordingly, the Court denies Defendant's motion insofar as it requests the Court to find that Defendant is or was incompetent.[6]

---

[6] Although the Court finds that Defendant meets the legal definition of "competent" under *Nichols* and *Dusky*, Defendant and his counsel are, of course, free to raise Defendant's mental health issues as they may be relevant to sentencing. *See* United States Sentencing Guidelines § 5H1.3 and 18 U.S.C. § 3553(a).

B. Ineffective Assistance of Counsel

Defendant alternatively argues that Freeman's representation of Defendant amounted to ineffective assistance of counsel because Freeman failed to provide Defendant with certain information related to the plea deal offered by the government. (*See* Washington Aff.) As a consequence of that alleged ineffective assistance of counsel, Defendant argues that the Court should order the government to reoffer its plea agreement to Defendant, pursuant to *Lafler*. (Doc. No. 85.) For the reasons set forth below, the Court finds that Defendant was adequately represented before, during, and after trial.

The legal standard for an ineffective assistance of counsel claim is by now well-known:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001) (noting that defendant must meet the two-pronged test established by *Strickland* that (1) counsel's performance was deficient, and (2) defendant was prejudiced by this). This

8

same standard applies to ineffective assistance of counsel claims related to an attorney's conduct in plea negotiations. *See Lafler*, 132 S. Ct. at 1384; *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012).

Concerning the first prong of the *Strickland* test, the Supreme Court has instructed courts to be "highly deferential" in scrutinizing an attorney's performance and avoid the temptation to "second guess" counsel's conduct after an adverse decision against the defendant. *Strickland*, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (quotation marks and citations omitted)). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

Nonetheless, courts have found attorneys' performance in the plea context to be deficient where counsel conveyed incorrect information or simply failed to convey information to the defendant. In *Frye*, for example, the Supreme Court found counsel to be ineffective where he simply did not communicate the government's plea offers to defendant. 132 S. Ct. at 1410. Several cases have also found that counsel's misrepresentation of the maximum sentence or the guidelines range faced by a defendant after trial to constitute deficient performance. *See, e.g.*, *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999) (finding deficient performance where "[counsel] estimated that the Guidelines range upon a guilty plea would be approximately the same as upon conviction after trial, whereas the range under the plea agreement would have been 78 to 97 months and upon conviction after trial would likely be (and was) 121 to 151 months"); *United States v. Gordon*, 156 F.3d 376, 378–80 (2d Cir. 1998) (deficient performance where counsel advised client, who was later sentenced to 210 months imprisonment after trial, that his maximum sentence would be 120 months). Similarly, failing to relate an important term of a plea agreement to the defendant as he considers whether to accept the deal may also constitute deficient performance. *See Cullen*, 194 F.3d at 404 (noting that "there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution"). For example, in *Cullen*, the attorney had informed the defendant that he was sent a plea agreement, "but did not tell him the terms of the agreement," including the difference between the plea offer and the likely sentence in the event of a guilty verdict at trial. *Id.* at 402–03.

As to *Strickland*'s second prong, after establishing a deficiency, the defendant must still "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. Specifically, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Second Circuit has provided some guidance as to how a defendant might satisfy this prong:

> In the context of plea negotiations, a defendant can make this showing by producing both a sworn affidavit or testimony stating that he would have accepted or rejected a plea agreement but for his counsel's deficient performance and also some additional "objective evidence" supporting his claim. This "objective evidence" can be a large disparity between the defendant's

advised and actual sentencing exposure. Even with such a disparity, however, the district court must still find the defendant's evidence to the effect that he would have made a different decision but for his counsel's deficient advice to be credible.

*United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (internal citations omitted). Thus, district courts are to consider all the evidence and determine whether counsel's deficient performance was a "but for" cause of defendant's decision. *See United States v. Arteca,* 411 F.3d 315, 321 (2d Cir. 2005) (explaining that this Circuit "has not adopted mechanistic rules for determining whether an adequate showing of prejudice has been made, but inquires into the record as a whole to determine whether a reasonable probability exists that absent counsel's error, the outcome of the proceeding would have been different").

In the present case, Defendant argues that Freeman's performance was deficient because he failed to provide Defendant with certain information about the plea deal being offered. Specifically, Defendant acknowledges in his Affidavit that Freeman *did* inform him that the plea agreement involved pleading guilty to charges resulting in a Guidelines sentence of approximately ten years' imprisonment, and that the judge had discretion to impose an even higher sentence if he chose to. (Washington Aff. at 1.) However, Defendant alleges that his counsel never told him that (1) under the plea agreement he conceivably could receive a prison sentence as short as seven years, or (2) he could appeal if he were sentenced to a prison term exceeding 121 months (over ten years). (*Id.* at 2.) In addition, Defendant alleges that he was never shown the actual plea agreement, nor was it read or explained to him. (*Id.*) In terms of prejudice, Defendant asserts that if he had "been properly advised . . . [he] would have pleaded guilty" pursuant to the plea agreement. (*Id.* at 3.) Further, Defendant's new counsel has submitted an Affirmation that recounts a conversation with Freeman about Defendant's decision not to plead guilty in which Freeman did not mention that he (1) read or explained the plea agreement to Defendant, (2) told Defendant about the possibility of a seven-year sentence, or (3) informed Defendant of his right to appeal a sentence of over ten years. (Gordon Aff. at 4.)

Freeman's August 21 letter contradicts Defendant's accusations of misconduct, stating that he showed Defendant the plea agreement and reviewed every line with him; that he informed Defendant that the mandatory minimum sentence pursuant to the plea agreement would be seven years, as opposed to the mandatory minimum of fifty-two years if he were convicted at trial; and that he told Defendant that the plea agreement permitted him to appeal a sentence that exceeded the Guideline's range of 114 to 121 months. (Doc. No. 82.) Freeman's letter also "declare[d] pursuant to 28 U.S.C. § 1728 that . . . the contents of this letter [were] true and accurate to the best of [his] knowledge."[7] (*Id.* at 2.)

Although the Court finds Freeman's version of events to be far more credible and plausible than that offered by Defendant, the Court need not even resolve the discrepancies between them, since the Court finds that Defendant cannot meet the second prong of the *Strickland* test.[8] In this regard,

---

[7] Defendant points out that Freeman likely intended to refer to 28 U.S.C. § 1746, which governs unsworn declarations, and urges the Court to disregard Freeman's letter because he did not declare "under penalty of perjury" that its contents are "true and correct" as required by that statute. (Reply at 2–3.)

[8] Nevertheless, if the parties wish – for the sake of the appellate record – to proceed with an evidentiary

Defendant has offered his Affidavit, claiming that he would have taken the plea had he been properly advised as to its terms. (Washington Aff. at 3.) However, Defendant's self-serving statement hardly constitutes compelling evidence that Defendant would have made a different decision.

First, the Court finds it extremely implausible that Defendant would have accepted the plea offer simply because there was a remote chance he could be sentenced to seven years instead of ten. The likelihood of receiving a seven-year sentence under the plea agreement was all but infinitesimal, since it would have required the Court to impose a sentence of one day or less on the robbery count. Given that the Court was free to consider as relevant evidence Defendant's participation in multiple robberies that included the threatened and actual use of force, the Court finds that Defendant could not have reasonably expected to receive such a low sentence.

Second, the "large disparity" between the plea offer and the mandatory minimum sentence post-trial further undermines Defendant's argument. *Frederick*, 526 F. App'x at 93. Defendant does not contest that he was made aware of the forty-two year disparity between the ten-year plea offer and the fifty-two-year mandatory minimum sentence that would result from a guilty verdict at trial. He only contends that he was not notified that he might have been sentenced to seven years' imprisonment under the plea agreement, in which case there would be a disparity of forty-five years. The Court finds that Defendant's claim that the forty-two year disparity did not compel him to accept the plea offer but that a forty-five year disparity would have is simply incredible.

Third, the Court also finds it highly improbable that Defendant's knowledge that he could have appealed a sentence that was over ten years would have prompted Defendant to act differently than he did. Even with the information that Freeman allegedly failed to convey, all available facts suggest overwhelmingly that Defendant still would have chosen to go to trial. For instance, even after his conviction, Defendant continued to maintain his innocence and insist that the witness against him lied. (Barr at 2); *see Zandi v. United States*, 460 F. App'x 51, 53 (2d Cir. 2012) (holding that a defendant's continued proclamation of his innocence "undermines [his] bare assertion that he would have accepted a plea agreement if properly advised"); *see also Cullen*, 194 F.3d at 407–08 ("In assessing Cullen's credibility, the fact-finder would be entitled, but not required, to consider Cullen's continued protestation of innocence as weighing against the credibility of his claim . . . ."). The government further notes, and Defendant has not disputed, that at no point during the reverse proffer session did Defendant express any interest in pleading guilty. (Opp'n at 11.)

In light of these facts and the reasonable inferences to be drawn from them, the Court finds incredible Defendant's claim that he would have pleaded guilty had he been informed about the remote possibility of a seven-year sentence after a plea and/or about the right to appeal a sentence that exceeded ten years. As such, the Court finds that Defendant has not demonstrated a "reasonable probability" that, but for his counsel's allegedly deficient performance, he would have pleaded guilty.

---

hearing concerning the first prong of the *Strickland* test, the Court would have no objection to conducting a hearing at which Freeman and Defendant could give testimony under oath.

Accordingly, Defendant's motion, to the extent it relies on a finding of ineffective assistance of counsel, is denied.

### C.  Final Thoughts

Although not explicitly raised by Defendant, a serious question posed by the facts of this case – and perhaps the elephant in the room – is the fairness of the fifty-two-year mandatory minimum sentence that Defendant is facing because he opted to forego a ten-year plea offer and go to trial. The Court does not doubt that Congress had the authority to create the legislative scheme that requires such a sentence. Moreover, the Supreme Court has made clear that plea bargaining of this kind – even where the spread of the potential sentences exceeds forty years – does not offend the Constitution. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("[I]n the 'give-and-take' of plea bargaining, there is no such [constitutionally impermissible] element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."); *id.* at 364–65 (upholding constitutionality of prosecutor's conduct in presenting defendant with choice between a likely five-year sentence under a plea agreement or a potential life sentence at trial); *see also United States v. Stanley*, 928 F.2d 575, 581 (2d Cir. 1991) ("The Supreme Court has made clear that threatening to bring otherwise legitimate charges to induce a defendant to accept a plea bargain 'no more than openly present[s] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he [is] plainly subject to prosecution." (quoting *Bordenkircher*, 434 U.S. at 365)).

But not all that is constitutional is just, and it is difficult to see how a forty-two-year trial penalty for a twenty-seven-year-old defendant who is not alleged to have fired a weapon, much less killed anyone, could be "the right thing" – no matter how that vague term is defined. *See* Nicholas Lemann, *Street Cop*, New Yorker, Nov. 11, 2013, at 47. Under the Constitution and laws of the United States, prosecutors are accorded vast discretion in how they charge and prosecute cases. *See, e.g.*, *United States v. Goodwin*, 457 U.S. 368, 382 (1982) (acknowledging "the broad discretion entrusted to [a prosecutor] to determine the extent of societal interest in prosecution"); *Bordenkircher*, 434 U.S. at 365 ("There is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse." (footnote omitted)). Because of that discretion, public safety and respect for the law turn as much on the exercise of prosecutorial judgment as on the laws themselves. Here, the Court is left with the definite impression that a fifty-two-year sentence is unnecessary and unjust. Nevertheless, in this regard, the Court is powerless to do more than admonish, and can merely ask that the prosecutors involved in this case – at all levels – consider whether this is a sentence and an exercise of prosecutorial discretion worthy of the public's trust and confidence. Is it a sentence of which they will be proud – next month and decades from now? Is this a sentence that will promote respect for the law and the nation? Ultimately, these are questions only they can answer, but how they respond clearly has implications for Defendant and for all who share George Washington's belief that "the due administration of justice is the firmest pillar of good Government." Letter from President George Washington to Attorney Gen. Edmund Randolph (Sept. 28, 1789) (on file with the Library of Congress).[9]

---

[9] It would appear that the government has the authority to effect a more "just resolution" in this case, perhaps by moving to vacate the second § 924(c) conviction. *See, e.g.*, *United States v. Holloway*, Nos. 95-cr-78, 01-cv-1017 (JG) (E.D.N.Y.

## III. CONCLUSION

For the reasons stated above, Defendant's motion requesting that he be provided another opportunity to accept the government's pre-trial plea offer or have the jury verdict set aside due to his alleged mental incompetence is denied. The Clerk of the Court is respectfully requested to terminate the motion pending at Doc. No. 85.

Accordingly, IT IS HEREBY ORDERED THAT the parties shall appear for sentencing on Friday, August 29, 2014 at 11:00 a.m. in Courtroom 905 of the Thurgood Marshall Courthouse. Defendant shall file his sentencing submission on or before Friday, August 15, 2014, and the government shall respond by Friday, August 22, 2014.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: July 31, 2014
New York, New York

\* \* \*

The government is represented by Assistant United States Attorneys Christopher J. Dimase and Telemachus P. Kasulis, United States Attorney's Office, One St. Andrew's Plaza, New York, New York 10007.

Defendant is represented by David A. Gordon, 148 East 78th Street, New York, New York 10075.

Jul. 10, 2014) (granting defendant's motion, without opposition from government, to vacate two of his 18 U.S.C. § 924(c) convictions); *United States v. Martinez-Blanco*, Nos. 06-cr-396, 11-cv-540 (TCB) (N.D. Ga. Mar. 31, 2014) (granting joint motion to reduce sentence from life imprisonment to term of twenty-five years); *United States v. Williams*, No. 12-cr-8 (DLC) (D. Mont. Dec. 18, 2012) (approving, with consent of government, dismissal of three of four 18 U.S.C. § 924(c) counts on which defendant had been convicted at trial); *United States v. Hungerford*, No. 03-cr-74 (RFC) (D. Mont. Oct. 27, 2010) (moving to dismiss all but two counts of conviction, including six of seven § 924(c) convictions). Surely, such a resolution – which would still require a mandatory minimum sentence of twenty-seven years – would be sufficient to meet the objectives of sentencing set forth in 18 U.S.C. § 3553(a), and would, by any measure, be a closer approximation of the "right thing," to which prosecutors, defense lawyers, and judges all aspire.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/31/2014