EBI8WASC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                              11 Cr. 605 (RJS)

5   RANDY WASHINGTON,

6              Defendant.

7   ------------------------------x

8                                             November 18, 2014
                                              3:15 p.m.
9
    Before:
10
                      HON. RICHARD J. SULLIVAN
11
                                              District Judge
12
                              APPEARANCES
13
    PREET BHARARA
14       United States Attorney for the
         Southern District of New York
15   CHRISTOPHER DiMASE
         Assistant United States Attorney
16
    DAVID GORDON
17       Attorney for Defendant

18
    Also present:  IRA LONDON, CJA Attorney on duty
19

20

21

22

23

24

25

EBI8WASC

| | |
|---|---|
| 1 | (Case called) |
| 2 | THE DEPUTY CLERK:  For the government. |
| 3 | MR. DiMASE:  Good afternoon, your Honor.  Christopher |
| 4 | DiMase for the government. |
| 5 | THE COURT:  Mr. DiMase, good afternoon. |
| 6 | For the defendant. |
| 7 | MR. GORDON:  David Gordon for Mr. Washington. |
| 8 | THE COURT:  Mr. Gordon, good afternoon. |
| 9 | Mr. Washington, good afternoon. |
| 10 | It's been a while since we have been here together. |
| 11 | This is a case in which the jury returned a guilty verdict on |
| 12 | all counts some time ago.  Sentencing has been put off a number |
| 13 | of times to allow Mr. Washington to make certain motions, we |
| 14 | had a change of counsel in the interim, and also more recently, |
| 15 | after my decision of this summer, July 31st, to allow the |
| 16 | parties to sort of confer to see whether or not they could |
| 17 | reach some sort of agreement as to what might be considered a |
| 18 | more just sentence, I think could only be considered a more |
| 19 | just sentence. |
| 20 | I received a letter on Friday from Mr. DiMase advising |
| 21 | me or apprising me of the recent developments between the |
| 22 | parties.  According to the letter, the government apparently |
| 23 | has offered to dismiss the second 924(c) count, which would |
| 24 | have the effect of lowering the mandatory sentence from 50 |
| 25 | years to 25 years, which is a pretty sizable deduction.  The |

EBI8WASC

1     government, however, has conditioned that offer on Mr.

2     Washington waiving certain appellate rights and rights to

3     collaterally attack the sentence and the conviction.  This is

4     apparently something Mr. Washington has declined to do.  And so

5     the government proposed that we schedule this conference to

6     "permit the Court to allocute the defendant regarding his

7     decision to reject the government's offer."

8              MR. GORDON:  Your Honor, with respect to attacking the

9     sentence, I think under the government's new offer, should the

10    sentence be above the stipulated guidelines, above the top of

11    that range, I think the government's position is he can still

12    appeal that sentence.  So he is not giving up all rights to

13    appeal the sentence.

14             THE COURT:  That wasn't clear to me.

15             MR. GORDON:  It would be the same terms as in a plea

16    agreement.  Under the standard plea agreement, the defendant

17    always has the right to appeal any sentence that is above the

18    top of the stipulated range.

19             THE COURT:  I don't know what the stipulated range is

20    in this case.

21             Is there a range that would be stipulated to as part

22    of an agreement?

23             MR. DiMASE:  We have discussed that, and what it

24    amounts to is the same range that is currently set forth in the

25    PSR for Mr. Washington, 292 to 365, plus 60 months on the

EBI8WASC

1  bottom and the top end which accounts for the mandatory

2  consecutive five year sentence on the first 924(c) count.

3          This probably bears noting.  It's in the government's

4  letter, but since the trial conviction, the United States

5  Supreme Court decided *Alleyne*, which requires a jury to make

6  specialized findings on things that increase a mandatory

7  minimum sentence, for example, brandishing or discharging a gun

8  in a 924(c) context.  So as the government's letter makes

9  clear, at this point 50 years is the mandatory minimum.  You

10  take away one of the 924(c) counts, and we are down to five on

11  the remaining 924(c) context.

12          THE COURT:  Right.  But there is a mandatory 20 on the

13  drug count.

14          MR. DiMASE:  Right.  The guidelines would be 290 to

15  365, plus 60 months on the bottom and top end of that range,

16  with a mandatory minimum of 25 years.  That's what the

17  guidelines would amount to.  And I have apprised Mr. Gordon of

18  that range.  I think Mr. Gordon's position is it is kind of

19  academic because Mr. Washington is not interested in any

20  agreement where he is waiving his appellate and collateral

21  attack rights.  I think the competency issue may be the issue

22  that he is seeking to litigate down the road.

23          I should note, as made clear in the government's

24  letter, Mr. Washington would also not be required to waive any

25  claim of ineffective assistance of his trial counsel, Mr.

EBI8WASC

Freeman, or Mr. Gordon for that matter, as part of this

agreement.  Under the attorney general's new policy, it has

made very clear in plea agreements with the government that

defendant need not forfeit those rights even where they make a

general appellate waiver.

THE COURT:  I am not sure what appellate issues Mr.

Washington is focused on.  Maybe he hasn't fully focused on

them yet.  But of the motions made so far, the motion relating

to his competence to engage in plea negotiations, and I guess

by extension to go to trial and be sentenced, it was one that

was made and rejected by me.  So if he wants to appeal that,

the government is saying that's a deal breaker on the offer,

right?

MR. DiMASE:  Yes, except any appellate challenge

besides ineffective assistance of counsel claim or a challenge

to a sentence above the top of the guidelines range, as we

discussed here today, would be barred by the agreement.

I should note this is the exact same appellate waiver

that any other defendant entering into any plea agreement,

usually in the context of a pretrial plea, would be required to

agree to as part of their plea agreement.  And here we are

taking the extraordinary remedy in dismissing the count

posttrial.

THE COURT:  I get that, but I think that the current

policy of the Department of Justice would be not to file the

EBI8WASC

1   second 924(c) in a case like this one, right?

2           If we hadn't had a trial and this case was getting

3   ready to go to trial, according to the attorney general's new

4   policy with respect to the filing of a second 924(c), it

5   probably would not be filed, right?

6           MR. DiMASE:  I am not aware of any formal policy of

7   the attorney general on the issue of multiple 924(c)s.  There

8   certainly has been quite a bit of guidance lately on PFIs on

9   (b)(1)(A), (b)(1)(B) mandatory minimum sentences, but I don't

10  believe there has been any formal policy in the area of 924(c)

11  charges.  And that's an issue that is certainly being worked

12  through.

13          THE COURT:  All right.  Maybe we will come to this in

14  a minute.

15          Mr. Gordon, is there something you would like to say?

16          MR. GORDON:  I am troubled by the competency issue.  I

17  know your Honor made a ruling, but we have a situation where

18  two psychologists said that, because of Mr. Washington's

19  cognitive impairment, there is a serious issue as to whether he

20  understood the consequences of losing trial.

21          THE COURT:  I don't think that's really what they

22  said.

23          MR. GORDON:  Also, that he had a totally unrealistic

24  view of his chances of winning the trial.

25          THE COURT:  I think they said it might affect his

EBI8WASC

1    judgment in those regards, but I don't think they went so far

2    as to suggest that he was not competent, as that term is

3    defined, and I don't think there is a different definition in

4    the plea context than there is in the trial context or the

5    sentencing context.

6              MR. GORDON:  Your Honor, I think at a hearing, had

7    your Honor held a hearing on exactly what the psychologists

8    meant by their reports, as to the extent of his impairment and

9    as to whether he could intelligently make a decision whether or

10   not to plead guilty given his impairment, I think your Honor

11   might have reached a different result.

12             THE COURT:  I didn't see anything in the report that

13   even made this an issue.  I have ruled on that.

14             MR. GORDON:  I don't expect your Honor to reach a

15   different conclusion.  However, it seems to me I don't know

16   that that's something I can waive.  If you're wrong, then he

17   should be given an opportunity to accept the original offer.

18   And the government is saying for him to litigate that on

19   appeal, he has got to be willing to spend the rest of his life

20   in jail if he loses.  He would have to serve an additional 25

21   years if he loses that argument on appeal.

22             The government is saying that he can appeal the

23   effectiveness of counsel issue.  If he wins that, all that

24   would happen is it would be sent back to you.  The only way he

25   can win it on appeal is if the circuit said that you were wrong

1    in finding that there was no reasonable probability that he

2    would have accepted such a plea so you didn't have to get to

3    the issue of who is telling the truth.  It would be sent back

4    to you for a hearing, in which after hearing you might reach

5    the same conclusion, you might not, or you still might not

6    believe Mr. Washington.

7              THE COURT:  I get all that.  If he doesn't take this

8    deal, then Mr. Washington retains all the abilities to appeal

9    any ruling that I have made.  He can appeal anything.

10             MR. GORDON:  That's correct.  But it seems to me, I

11   haven't examined the trial record carefully enough for me to

12   feel that every possible issue would be frivolous, but my gut

13   reaction is he is not going to win on the search issue, whether

14   he had standing, and I don't think he is going to win on

15   whether he had a fair trial.  It seems to me the only issues

16   that are probably viable on appeal are the ineffective

17   assistance of counsel issue and also the competency issue.

18             THE COURT:  The ineffective assistance of counsel he

19   will be able to appeal with the government's agreement.

20             MR. GORDON:  Even if he wins that, he is only

21   ultimately going to do better if your Honor finds in his favor

22   on remand.

23             THE COURT:  I am not sure what you're telling me that

24   I didn't already understand.

25             Mr. Washington, the bottom line is this.  The

EBI8WASC

```
1    government has made this offer.  I can't order them to do this.
2    They have the ability to dismiss this second 924(c), which
3    would have the impact of reducing your mandatory sentence from
4    50 years to 25 years.  That's a pretty significant difference.
5    I can't order them to do it.  So they get to attach the
6    conditions that they want to attach to that decision.  The
7    implications, of course, are that if you turn this deal down
8    and you appeal and you don't win on appeal, or, as Mr. Gordon
9    said, you even win on appeal, but it comes back to me to
10   determine your competence, and I have a hearing and ultimately
11   determine that you were not incompetent, then you're stuck with
12   the 50 years.
13           I want to make sure you understand that.  Do you
14   understand those are the stakes here?  I can't order them later
15   to say, well, come on, just drop that second count.  They don't
16   have to listen to me.  They don't have to listen to me on any
17   of this.  So the Supreme Court has made it clear they are
18   certainly allowed to condition their offers this way.  So I
19   think the best that anybody can do is ask them to reconsider,
20   which I have done and Mr. Gordon has done.  But you should
21   understand that there's no guarantees that they are going to do
22   it again.  This is a one-time-only offer.  Do you understand
23   that?
24           THE DEFENDANT:  Yes.
25           THE COURT:  And you still want to forgo, not take
```

EBI8WASC

 1  advantage of this offer, because you want to be able to appeal

 2  without any restrictions, that's what you wish?

 3          I just want to make sure that he is not going to later

 4  say that he didn't understand.

 5          That's what you wish to do?

 6          THE DEFENDANT:  Say it again.

 7          THE COURT:  Is it your position that you're willing to

 8  reject this offer the government has made to come down from a

 9  50 year mandatory minimum sentence to a 25 year mandatory

10  minimum sentence?  That's their offer.  They can argue for a

11  higher sentence, but unless they do this, I can't sentence you

12  to less than 50 years.  So you're willing to give up their

13  offer to dismiss the second gun count, which carries a

14  mandatory consecutive 25 years on top of the 25 years that are

15  already required, you're willing to give up that offer because

16  you don't want to have any restriction on your appellate

17  rights?

18          MR. GORDON:  Before he answers that question, I have a

19  suggestion.  Perhaps it might be wise, given what is at stake

20  here, is for your Honor to assign another attorney, an

21  additional attorney, to review these issues with Mr. Washington

22  between now and the sentence date, to see if perhaps someone

23  else can get through to him that this would be a big mistake to

24  not accept the government's offer.  I don't see any harm being

25  done by having another opinion here.  With respect to the

EB18WASC

1  sentence day, it would not have to change.

2           THE COURT:  It might have to change.  Sentencing is

3  just a few weeks away.

4           MR. GORDON:  It might have to change a little bit, but

5  not very much, and this is pretty important.

6           THE COURT:  It's definitely important.

7           MR. GORDON:  My sentencing submission is due tomorrow.

8  There is really nothing I can submit.  The mandatory minimum is

9  50 years.  There is not much I can say.  So I don't really

10  intend to submit anything.

11           THE COURT:  I think that's fine.  I can tell you

12  confidently I am not going to sentence him to more than 50

13  years under the current posture of this case.

14           MR. GORDON:  That's why I have nothing to submit.

15           THE COURT:  That's fine.

16           Mr. DiMase, do you have any thoughts about the

17  appointment of a sort of shadow counsel to just advise Mr.

18  Washington with respect to this issue of the offer made by the

19  government?

20           MR. DiMASE:  I have no objection to that plan if the

21  Court thinks it would assist Mr. Washington.  The plan had

22  been, if this request had been made today, to have Mr.

23  Washington allocuted and then move forward.  But that said, if

24  he is not going to allocute today and he wants to speak to a

25  second attorney, we are not going to withdraw the offer that's

EBI8WASC

1   been made.  But there has to be an end point to it somewhere,

2   but it need not be today.

3       MR. GORDON:  At this point, Mr. Washington thinks he

4   is not going to change his mind, and he doesn't want the

5   sentence put off.  So I am not going to ask that the date be

6   changed now, but I think assigning another lawyer to at least

7   talk to him, perhaps he might change his position about the

8   sentence date.  Right now he wants to proceed, which I think is

9   not necessarily in his interest.

10      MR. FREEMAN:  May I speak to Mr. Gordon for a second?

11      THE COURT:  Mr. Freeman, who is prior counsel, is

12  here, and he has a right to be here, as does anybody.  It's a

13  public courtroom.  So if you wanted to confer with Mr. Gordon,

14  that's fine.

15      (Pause)

16      THE COURT:  Mr. Gordon.

17      MR. GORDON:  Your Honor, at this point I think we

18  should keep the sentence date, but if your Honor would assign

19  counsel, I will certainly bring counsel up to speed to discuss

20  with Mr. Washington and me the government's offer and whether

21  or not he should take it.

22      THE COURT:  OK.  Let me find out who is on CJA duty

23  today, unless somebody knows.  I will have to make that call.

24  Maybe we will take a short break just so I can determine who it

25  is, confirm that it is not someone who would have a conflict in

EBI8WASC

1   this case, and once I have the name I can make the appointment.

2   I don't know that that lawyer can get here on short notice.  If

3   they can, I will have them come over.  Otherwise I will have

4   them follow up later.

5         MR. DiMASE:  I have one point to add.  I think the

6   government would like to have a resolution to whether or not

7   Mr. Washington wants to avail himself to this offer before the

8   sentencing occurs.  I think the parties on both sides deserve

9   to know what is going to happen on the day of sentence and not

10  be in a position where there is a 25 year swing in a potential

11  mandatory minimum based on defendant's decision that morning.

12        THE COURT:  It's not complicated math, but I don't

13  mind having the resolution before the sentencing.

14        That means either the offer expires some date before

15  December 3rd or we push back the sentencing a reasonable period

16  of time to allow counsel and Mr. Washington and perhaps Mr.

17  Gordon to confer a little bit.  Why don't we first find out who

18  is on CJA duty to see if the availability of that lawyer might

19  inform the decision.  It sounds like Mr. Washington wants to go

20  forward on December 3.  I think ideally we all would like to

21  keep this on that track.  It is a simple decision that has to

22  be made.  It's an important decision, and it's very important

23  that Mr. Washington consider the ramifications, the

24  consequences of this decision, but I don't think it should take

25  too long to do it as long as we can line up the lawyer who is

EBI8WASC

1    going to talk to him about it.

2            MR. DiMASE:  To be clear, if the defendant does want

3    more time, we don't object to moving the sentencing date, but I

4    think the government will provide a deadline for the offer

5    before the sentencing date in order to have some clarity.

6            THE COURT:  Mr. Washington, I think it is not a bad

7    idea to have a second opinion.  Do you have any objection to

8    talking to another lawyer?

9            THE DEFENDANT:  No.

10           THE COURT:  I think it's in your interest.  There is

11   no harm that could come of it.  Ultimately this is your

12   decision, but I think it's not a bad thing to have a little

13   more time to think about it and perhaps have another lawyer

14   looking at the issue and giving you his or her thoughts on the

15   subject.  OK?

16           THE DEFENDANT:  Yes.

17           THE COURT:  While we are waiting for that, I wrote an

18   opinion in which I provided my thoughts.  I can't call it more

19   than that, and I can't compel anybody to do anything here.  The

20   government certainly has no obligation to withdraw that second

21   924(c).  I appealed to the government's sense of justice in

22   doing the right thing because it seems to me that there is

23   something troubling about a case in which the offer was ten

24   years for the crime, so the perception was the crime before

25   plea warranted ten years worth of punishment but after trial it

EBI8WASC

1    was worth 50 years worth of punishment, which seems to me that

2    the government is more interested in deterring people going to

3    trial than deterring crime, which I think is a bad perception

4    to have out there.

5              I think tying these conditions to this offer, which I

6    commend them for, because I think it was a good decision to

7    make this offer, but tying this offer to the waiver of

8    appellate rights also does look small.  It looks as though this

9    decision is not based on prosecutorial judgment as to what

10   would be an appropriate sentence, but, rather, as a quid pro

11   quo for giving up appellate rights, as though the waiver of

12   appellate rights is worth 25 years, or put the other way, the

13   refusal to waive those rights needs to be deterred and punished

14   to the tune of 25 years.  I think that doesn't look good.  It

15   seems to me that the government should have confidence in its

16   own proof and confidence in its positions on appeal.  It would

17   seem to me that the government should decide what is the

18   appropriate sentence, and what is the appropriate mandatory

19   sentence, and if it isn't 50 years, that shouldn't turn on

20   whether or not the defendant is willing or not willing to waive

21   his appellate rights.

22             That's just my opinion.  I can't order anybody to do

23   anything, but that's what it seems to me.  It's my reference to

24   Title 21, Section 851, where the attorney general has made it

25   clear that sort of reflexive filing of very draconian mandatory

EBI8WASC

1   sentencings in the context of prior felony informations in 851,

2   that has been revisited and now it's the exception that that

3   would be brought.  It's not to be used as a trial penalty.

4   There does seem to be some tension between that policy and the

5   policy as it either exists or used to exist with 924(c)s.  I

6   would think the same criticisms that would apply to one would

7   also apply to the other, and there is a certain inconsistency

8   in adopting a policy like the attorney general has announced

9   for prior felony informations under 851 and yet persisting with

10   this policy under 924(c)s.

11          There are some differences, and maybe one can

12   articulate a reason for a different policy, but there does seem

13   to be a tension, and it seems to me that if the government's

14   view is that 50 years is too long, then they should take the 25

15   year mandatory consecutive off.  The decision as to whether it

16   is unjust, whether it is not the right thing, shouldn't turn on

17   whether or not the defendant is going to waive his appellate

18   rights it seems to me.

19          In any event, Ira London is the attorney who is on CJA

20   duty today.  I saw him earlier.  I don't know if he is still

21   around.  I can reach out to him to see if he is around.  It

22   might be easier while everybody is in the building to have them

23   huddle up.  Any objection to that?

24          MR. GORDON:  No.

25          THE COURT:  We will make that call.  So everybody sit

EBI8WASC

1    tight while we do that, and then I will be back with you

2    shortly.

3            I didn't mean to lecture the government.  The

4    government has tremendous power in many regards.  They have the

5    power to offer a 10 year deal, the power to offer a 25 year

6    deal, the power to offer a mandatory 50 year deal, and I think

7    ultimately they have to determine what is just, what is right,

8    and whether or not that decision turns on the quid pro quo of

9    waiving certain rights or certain appellate arguments.  We are

10   really talking about just one or two arguments that would

11   survive and be real.  So it seems to me that maybe we are not

12   arguing about that much.

13           So think about that, Mr. DiMase, while I am reaching

14   out to Mr. London.  It's not something you can decide today, I

15   am sure, but do think about it.

16           MR. DiMASE:  Yes, your Honor.

17           (Recess)

18           THE COURT:  I will note that Mr. London has arrived.

19           Thank you, Mr. London.

20           MR. LONDON:  Good afternoon, your Honor.  Twice in one

21   day.

22           THE COURT:  That's right.

23           Mr. London is the CJA lawyer on duty, and so I don't

24   know, Mr. London, if anybody has sort of buttonholed you and

25   told you why you are here.

EBI8WASC

                    MR. DiMASE:  He just got here, your Honor.

                    THE COURT:  In a nutshell, here is the situation.  Mr.

Washington, who is seated next to you, was charged in an

indictment.  In broad strokes, he was offered a plea deal by

the government that involved a sentence of about ten years.  He

declined that offer and went to trial.  The government

superseded in, I guess, the interim, and Mr. Washington was

ultimately convicted on two 924(c) counts with a prior felony

information on the narcotics count, so at the time a mandatory

52 year sentence.  An intervening Supreme Court case has made

that a mandatory 50 year sentence because the jury made no

special finding on brandishing the firearm for the first

924(c), which would have made it a seven year mandatory

consecutive.  So instead it's just a five year consecutive, but

not that much difference.

                    So, now the situation is that Mr. Washington is facing

a mandatory term of imprisonment of 50 years.  There have been

various motions posttrial.  I have ruled on those.  But in

ruling and denying the motions made by defendant, I did ask or

implore the government to consider whether it might be more

just to withdraw or dismiss the second 924(c) count.  The

government, I think to its credit, has agreed to do that and

has offered a plea deal of a mandatory 25 years, with a

guidelines range that, in the government's view, is higher than

that but takes the second 924(c) off the table.  But that offer

EBI8WASC

is contingent on Mr. Washington waiving certain appellate

rights and collateral attack rights, which he thus far is

inclined to reject.

        Mr. Gordon is representing him.  Mr. Freeman

previously represented Mr. Washington.  We have a sentencing

date of December 3rd.  And the thought was it might be useful

for Mr. Washington to get a second pair of ears as to the

second opinion from counsel just with respect to the offer made

by the government.  So that's what you're being proposed as, as

sort of the second pair of eyes and ears just to advise Mr.

Washington with respect to the government's recent offer.

        I was hoping that you could meet with him, get

information from Mr. Gordon and from the government, as you

need, but meet with Mr. Washington, discuss the offer, advise

him on it, and then perhaps report back to the Court with a

letter by December 1, if that's enough time.  We have a

sentencing date of December 3.  That's what makes this a little

tight.  Mr. Washington would prefer not to adjourn the

sentencing.  But if it were impossible for you to meet that

tight deadline, I might be inclined to do a very short

adjournment of maybe a week or ten days.

        In very broad strokes, that's where we stand.

        MR. LONDON:  May I have a moment, Judge?

        I will be happy to comply with the Court's schedule.

I will meet with Mr. Washington next week at the jail, and I

EBI8WASC

1    will confer with Mr. Gordon briefly.

2              THE COURT:  You think you can write a letter to the

3    Court, just advising what Mr. Washington's views are, or do you

4    think we need to have another conference to do this in person?

5              MR. LONDON:  If that's appropriate, I will.

6              THE COURT:  The government has requested that we

7    resolve the issue of the plea offer before sentencing.  Mr.

8    Washington has requested that we go forward with sentencing on

9    December 3rd, so that doesn't leave a ton of time in between.

10             Mr. DiMase, you wanted me to allocute Mr. Washington

11   with respect to the offer if he decides to decline it, right?

12             MR. DiMASE:  That's correct, your Honor.  I think it's

13   appropriate here.  Given Mr. Washington's allegations about the

14   plea offer made prior to trial, I just foresee the possibility

15   of this coming up again, and I think it's appropriate to

16   allocute him.

17             THE COURT:  We are scheduled for a sentencing on

18   December 3rd at 10:30.  Let's plan on coming back together

19   December 1st at 2:30, if you're all available.

20             MR. GORDON:  I am on duty that day in the Southern

21   District so I am certainly available.

22             THE COURT:  You will be around.  It shouldn't take

23   long.

24             MR. LONDON:  That's fine.

25             MR. DiMASE:  That's fine, your Honor.

EBI8WASC

1            THE COURT:  All right.  Let's see where we are then.

2            Mr. DiMase, you think about what I said.

3            Mr. Washington, you think about what I said, and then

4    December 1, I guess, hopefully you can tell me what your

5    decision is.  All right?  Any questions that you have now?

6            THE DEFENDANT:  No.

7            THE COURT:  Is there anything else we should cover

8    while we are here today?

9            MR. GORDON:  I don't think so.

10           MR. DiMASE:  Nothing from the government.

11           THE COURT:  Let's see where we get.

12           Mr. Gordon, anything else we need to do on the record?

13           MR. GORDON:  No.

14           THE COURT:  Thanks.  Have a good day.

15           (Adjourned)

16

17

18

19

20

21

22

23

24

25